IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:17-CV-16-FL

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| TANISHA SALMON a/k/a Tanisha | ) | |
| Chambers, and RAEFORD LEWIS, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter is before the court on plaintiff's motion for summary judgment (DE 29). The issues raised have been fully briefed and are ripe for adjudication. For the reasons that follow, the court grants plaintiff's motion for summary judgment.

## STATEMENT OF THE CASE

On January 10, 2017, plaintiff filed this action against defendant Tanisha Salmon ("Salmon"). Plaintiff subsequently joined defendant Raeford Lewis ("Lewis") to this action by amending its complaint with leave of court on November 1, 2017. In its amended complaint, plaintiff alleges that defendants were tax preparers that either filed or oversaw the filing of numerous false tax returns to the IRS in order to overstate the amount of taxpayer's respective refunds and charge excessive fees for those refunds. (E.g., Am. Compl. ¶¶ 19–23). Plaintiff alleges several unlawful practices, including three different, systematic forms of false tax returns filed by defendants: 1) those with fabricated unreimbursed employee business expenses reported on Forms Schedule A, 2) those with fabricated self-employed business income and expenses reported on

Forms Schedule C, and 3) those with false claims for the Earned Income Tax Credit. Plaintiff seeks a permanent injunction against defendants and those in concert with them, barring them from engaging in tax preparation. Plaintiff also seeks disgorgement of fees from defendants that are derived from false returns implicating the particular practices described by the court above.

After being granted leave to file its amended complaint, plaintiff served its amended complaint on defendant Lewis. Defendant Lewis failed to timely respond to plaintiff's amended complaint. Plaintiff moved for entry of default, which request was granted by order of the court on February 5, 2018.

Plaintiff filed the instant motion for summary judgment on January 19, 2018 (DE 29), on the basis that defendants and tax return preparers acting at their direction or with their knowledge and consent have spent years filing false tax returns and reaping ill-gotten gains. In support of its motion, plaintiff relies upon a statement of material facts and many supporting documents. These documents broadly can be broken down in to several different categories, including 1) declarations of revenue agents, a paralegal, and other business record holders, testifying to the accuracy of records submitted in the case (DE 32–2 to –6, 32–131); 2) depositions of customers whose tax returns were prepared by defendants or others acting under the direction of defendants (DE 32–7 to –17, 32–19 to –24, 32–26 to –31); 3) depositions and responses to request for production by defendants (DE 32–18, 32–25, 32–126); 4) tax returns and accompanying forms for customers prepared by defendants or those acting under defendants' direction (DE 32–32, 32–33, 32–35 to –39, 32–41, 32–42, 32–44, 32–46, 32–48 to –60, 32–62, 32–64 to –75, 32–77 to –95, 32–97 to –111, 32–113 to –115, 32–117 to –125); 5) information on fees charged by defendants to plaintiffs for having their tax return prepared (DE 32–34, 32–40, 32–43, 32–45, 32–47, 32–61, 32–63, 32–112, 32–116, 32–129, 32–130, 32–132); 6) the articles of incorporation and other correspondence regarding QA Tax Service, Inc.

2

(DE 32–76, 32–96); and 7) defendants' tax records (DE 32–127, 32–128).

Defendants, proceeding <u>pro se</u>, responded in opposition to the motion, stating that they agreed to the issuance of a permanent injunction, but not to an order of disgorgement. (DE 36). Defendants argue that they were mislead and not properly advised in their duties. Defendants did not did not submit any opposing statement of facts or appendix of evidence.

## STATEMENT OF UNDISPUTED FACTS

Upon review of the affidavits, declarations, and exhibits submitted by plaintiff, and where defendants did not submit an opposing statement of facts or appendix, the court adopts the statement of facts submitted by plaintiff as summarized herein. <u>See</u> Local Civil Rule 56.1(a)(2) ("Each numbered paragraph in the moving party's statement of material facts will be deemed admitted for purposes of the motion unless it is specifically controverted by a correspondingly numbered paragraph in the opposing statement."); (Roseboro Letter (DE 33) at 2 (explaining the requirements of Local Civil Rule 56.1)).[1]

Defendants reside in Fayetteville, North Carolina and prepare tax returns for compensation. (Statement of Material Facts (DE 30) ¶¶ 8–11). Defendant Salmon employed individuals, either directly or through QA Tax Service, Inc., who prepare tax returns for compensation. <u>Id.</u> ¶ 12. The court addresses defendant Salmon's background, defendant Lewis' background, the relevant tax schemes in which they were involved, and the money received by defendants in fees for such false returns, in turn.

A.     Defendant Salmon's Relevant Experience

---

[1]Defendant Salmon was sent a Roseboro Letter by the court. (DE 33). Defendant Lewis was not sent a Roseboro letter by the court because he is in default (DE 28). However, defendant Lewis filed his response in opposition to plaintiff's motion for summary judgment jointly with defendant Salmon. Additionally, the affidavits, declarations, and exhibits submitted by plaintiff support the statement of facts. Therefore, the court makes the following findings with respect to defendant Lewis as well.

Defendant Salmon began working at LBS Tax Services ("LBS") as a tax return preparer in January 2013. (Salmon Dep. (DE 32–25) at 8:6–7; 10:7–9). Defendant Salmon worked at LBS until June 2014 at the store located at 5169 Bragg Boulevard in Fayetteville, North Carolina. (Salmon Dep. (DE 32–25) at 8:6-7; 10:25-11:3). Defendant Salmon's sister, Tonya Chambers, also instructed Defendant Salmon to "be in charge of the store." (Salmon Dep. (DE 32–25) at 10:14-19). Defendant Salmon's bosses, Tonya Chambers ("Chambers") and Vicky Eddleman a/k/a Vicky Barwick ("Eddleman"), were located in Florida, and there was nobody residing locally who defendant Salmon answered to or who oversaw the tax preparation store in Fayetteville. (Salmon Dep. (DE 32–25) at 11:8-12:7). Defendant Salmon received in-person training on tax preparation from Eddleman, and also took online tutorials on how to use tax software and file taxes with the IRS. (Salmon Dep. (DE 32–25) at 12:8–14:3).

On September 23, 2014, plaintiff filed a suit seeking an order of permanent injunction and disgorgement against Jean Demesmin, Chambers, and their related entities, including BPTS, LLC ("BPTS"), on September 23, 2014. See United States v. Jean Demesmin and Tonya Chambers, 6:14-cv-1537 (M.D. Fla.). In January 2015, defendant Salmon began working as a tax return preparer at BPTS, a business run by Tonya Chambers which replaced LBS at the same location in at 5169 Bragg Blvd. in Fayetteville. (Salmon Dep. (DE 32–25) at 9:5-11, 19:1-18). Defendant Salmon managed the BPTS store in Fayetteville. (Salmon Dep. (DE 32–25) at 20:5-17).

From January 2016 to January 2017, defendant Salmon worked for QA Tax Service. (Salmon Dep. (DE 32–25) at 9:12–17). QA Tax Service, Inc. was incorporated on November 30, 2015, and defendant Salmon was the Vice President of QA Tax Service. (Salmon Dep. (DE 32–25) at 24:11-22; 38:5-17; QA Tax Service Articles of Incorporation (DE 32–76)). Jasmine Morales ("Morales") was the president and Eddleman was the secretary of QA Tax Service. (QA Tax

Service Articles of Incorporation (DE 32–76)).  According to defendant Salmon, Chambers "gave" BPTS to her daughter (and Defendant Salmon's niece), Morales, who then incorporated and owned QA Tax Service.[2] (Salmon Dep. (DE 32–25) at 22:13-23:4).

At QA Tax Service, defendant Salmon prepared tax returns at the store in Fayetteville and handled payroll for all QA Tax Service stores, including the stores in Florida. (Salmon Dep. (DE 32–25) at 25:16-26:10).  Salmon managed the Fayetteville QA Tax Service store, and also would check on the QA Tax Service store located in Dunn, North Carolina, which did not have a formal manager. (Salmon Dep. (DE 32–25) at 26:14-27:3).  Defendant Salmon went to Dunn about twice weekly.  (Salmon Dep. at 45:20-46:2).

Defendant Salmon was a signatory on QA Tax Service's bank account, (Salmon Dep. (DE 32–25) at 24:11–25:15), hired people to work at the QA Tax Service stores in Fayetteville and Dunn, (Salmon Dep. (DE 32–25) at 29:4–10; Lewis Dep. (De 32–18) at 28:7–14), and either answered other tax preparers' questions or sought direction from Eddleman.  (Salmon Dep. (DE 32–25) at 30:19-31:5).  The Electronic Filing Identification Number ("EFIN") used to file tax returns prepared at the Fayetteville store when it operated as QA Tax Service and BPTS was registered with the IRS by defendant Salmon, in her name. (Salmon Dep. (DE 32–25) at 31:6-19).  Defendant Salmon would let any preparer at the store file tax returns using her unique EFIN.  (Salmon Dep. (DE 32–25) at 32:3-14).  Defendant Salmon would review the tax returns prepared at the Fayetteville store for typographical errors before the tax returns were filed, but would not review the substantive claims

---

[2]On December 9, 2015, a preliminary injunction was entered against Chambers preventing her, in part, from preparing tax returns from others or owning or operating a tax preparation business, and from transferring proprietary information and any employment agreements related to BPTS, LLC.  See United States v. Jean Demesmin and Tonya Chambers, 6:14-cv-1537, docket no. 15 (M.D. Fla. Dec. 9, 2015).  The court subsequently entered a permanent injunction against Chambers on November 16, 2016. See United States v. Jean Demesmin and Tonya Chambers, 6:14-cv-1537, docket no. 87 (M.D. Fla. Nov. 16, 2016).

made on those tax returns. (Salmon Dep. (DE 32–25) at 32:15-33:25; 45:3-9; 55:21-56:14).

The United States filed a suit seeking an order of permanent injunction and disgorgement against Morales, Eddleman, and QA Tax Service on January 9, 2017. See United States v. Vicky Barwick, et al., 6:17-cv-35 (M.D. Fla.). On November 20, 2017, the court entered an order of permanent injunction against the Defendants barring them from preparing tax returns or owning or operating a tax preparation business on November 20, 2017, as well as disgorging fees from defendants obtained through their false tax practices. United States v. Barwick, et al., 2017 WL 8229474 (M.D. Fla. Nov. 20, 2017).

Defendant Salmon resigned from QA Tax Service, Inc. on January 20, 2017, ten days after this lawsuit was filed. (Salmon Dep (DE 32–25) at 91:17-92:18; Salmon Resignation Letter (DE 32–96)).

B.      Defendant Lewis' Relevant Experience

Defendant Lewis currently works at Goodyear Tire and Rubber, and also worked at Goodyear while working as a tax return preparer. (Lewis Dep. (DE 32–18) at 6:17-25). Defendant Lewis worked as a tax return preparer at BPTS and QA Tax Service from 2014 through 2017 in the store in Dunn, North Carolina. (Lewis Dep. (DE 32–18) at 7:1-8:19; 9:20-10:3). Defendant Lewis began working as a tax preparer after seeing his mother, defendant Salmon, work as one, and speaking with his cousin, Morales, about becoming a tax preparer. (Lewis Dep. (DE 32–18) at 8:20-9:19).

Prior to working as a tax preparer, defendant Lewis had never prepared tax returns before, other than preparing his own using an online tax preparation service. (Lewis Dep. (DE 32–18) at 10:4-17). Eddleman provided the training on substantive tax preparation. (Lewis Dep. (DE 32–18) at 36:25-38:8; 40:2-11; 41:11-23). When defendant Lewis worked at BPTS and during the first year

he worked at QA Tax Service, Morales and Eddleman were defendant Lewis' bosses, defendant Salmon "would oversee everything." (Lewis Dep. (DE 32–18) at 16:2-24). After defendant Salmon resigned from QA Tax Service in 2017, defendant Lewis was "pretty much the manager that year" and worked closely with Morales and Eddleman. (Lewis Dep. (DE 32–18) at 16:25-20:4). Defendant Lewis received a salary that was based on the percentage of the total tax preparation fees the Dunn office received. (Lewis Dep. (DE 32–18) at 20:21-22:3). Defendant Lewis received around 15 or 20 percent of the fees received at the Dunn office. (Lewis Dep. (DE 32–18) at 21:14-22:3).

C.      Defendants' Engage in Several Patterns of Filing False Tax Returns

Plaintiff alleges defendants engaged in several systematic, false tax practices, including 1) making false Schedule A deductions, 2) fabricating Schedule C business income and expenses, 3) fabricating household help income and other facts to enable customers to claim the Earned Income Tax Credit ("EITC"). The court addresses each of these practices, in turn.[3]

1.      Making False Schedule A Deductions

Defendants and their preparers repeatedly and systematically claimed false deductions on the Schedule A portion of customers' tax returns. Several examples illustrate defendants' conduct.

a.      Donameche Ray

Defendant Salmon prepared the 2012, 2013, and 2014 federal income tax returns of Donameche Ray. (Ray Dep. (DE 32–23) at 10:15-24, 12:19-13:11; Ray Tax Returns (DE 32–123,

---

[3]Plaintiff alleges, and has proffered evidence of, several additional unlawful practices, including 1) failing to comply with EITC due diligence requirements, 2) false claims for education credits, 3) claiming an improper filing states for married customers or reporting non-qualifying dependents, 4) failing to disclose unconscionable fees, review completed tax returns with customers, and give customers a copy of the completed tax return, and 5) failing to identify the actual paid preparer of the tax returns. The court addresses in the text above those practices most pertinent to plaintiff's request for injunction and disgorgement.

32–124, 32–125)).  On the Schedule A attached to Ray's 2014 tax return, defendant Salmon falsely reported that Ray donated $2,395 to charity, when Ray and defendant Salmon did not even discuss any charitable contribution expenses. (Ray Dep. (DE 32–23) at 21:21-22:16; Ray Tax Returns (DE 32–123)).  As a result of this and other false claims, Ray's 2014 tax return claimed a bogus refund in the amount of $3,975. (See Ray Tax Returns (DE 32–123)).  On the Schedule A attached to Ray's 2013 tax return, defendant Salmon failed to report the mortgage interest that Ray paid in 2013. (Ray Dep. (DE 32–23) at 32:19-33:19; Ray Tax Returns (DE 32–124)).  Defendant Salmon falsely reported that Ray incurred $6,566 in unreimbursed employee business expenses for his job, including a vehicle expense ($2,437), parking fees and tolls ($2,375), and overnight travel expenses ($1,237).  (Ray Tax Returns (DE 32–124)).  Ray did not incur these expenses or discuss any such expenses with defendant Salmon. (Ray Dep. (DE 32–23) at 33:20-35:11).

b.      Christopher Upchurch

Christopher Upchurch's 2014 and 2015 federal income tax returns were prepared at the tax preparation store in Dunn, N.C. (Upchurch Tax Returns (DE 32–70, 32–71)).  Defendant Salmon is identified as the paid preparer of the 2015 tax return, although Upchurch recalls defendant Lewis preparing that tax return.  (Upchurch Dep. (DE 32–28) at 8:2-9:6, 23:2-10; Upchurch Tax Returns (DE 32–71)).  In the Form 2106 and Schedule A attached to Upchurch's 2015 tax return, defendant Lewis falsely reported that Upchurch drove his personal vehicle 19,999 total miles, of which 16,399 miles were for business use related to his job, when Upchurch did not provide any mileage amounts to Defendant Lewis. (Upchurch Dep. (DE 32–28) at 28:12-29:9; Upchurch Tax Returns (DE 32–71)).  Defendant Lewis also falsely reported that Upchurch incurred job-related vehicle expenses in the amount of $3,053 (for a $2,503 deduction), $2,001 for parking fees and tolls, and $3,633 in overnight travel expenses, when Upchurch did not provide defendant Lewis with any of this

information. (Upchurch Dep. (DE 32–28) at 27:17-29:2; Upchurch Tax Returns (DE 32–71)). Defendant Lewis also claimed a bogus "Form 4684" expense on the Schedule A, categorized as an "other" deductible expense, in the amount of $14,695. (Upchurch Tax Returns (DE 32–71)). Upchurch could only guess that this was related to the theft of his daughter's piggybank from his home – a loss which was nowhere near $14,695. (Upchurch Dep. (DE 32–28) at 29:23-30:19, 31:20-22). Defendant Lewis also falsely reported on the Schedule A that Upchurch donated $499 to charity in 2015. (Upchurch Dep. at 32:19-33:2; Upchurch Tax Returns (DE 32–71)). The preparer made similar false statements on Upchurch's 2014 tax return. (See Upchurch Dep. (DE 32–28) at 20:2-9; Upchurch Tax Returns (DE 32–70)).

c.     Sharron White

Sharron White's ("White") 2013, 2014, 2015, and 2016 tax returns were prepared at the BPTS and QA Tax Service store in Dunn, North Carolina. (White Tax Returns (DE 32–32, 32–33, 32–111, 32–113)). On the Form 2106 and Schedule A attached to White's 2015 tax return, the preparer falsely claimed that White drove her personal vehicle 40,000 miles, of which 31,200 miles were for business use related to her job, and claimed a false vehicle expense in the amount of $17,940. (White Tax Returns (DE 32–32)). White did not provide this false information to the preparer. (White Dep. (DE 32–29) at 9:18-10:1, 16:25-18:2). The preparer also falsely claimed, without White providing any such information, that White incurred $3,001 in meals and entertainment expenses related to her job. (White Dep. (DE 32–29) at 16:17-24). Defendant Lewis made similar false statements when preparing White's 2016 tax return. (See White Dep. (DE 32–29) at 10:4-13, 14:10-15:11, 22:8-23:10; White Tax Returns (DE 32–33)). Prior to 2015, the tax preparers at the Dunn tax preparation store (then doing business as BPTS), likewise claim fabricated, unreimbursed employee business expenses on White's Schedule A. (White Oct. 26, 2015 Dep. (DE

32–30) at 19:6-22:8, 28:22-37:14; White Tax Returns (DE 32–111, 32–113)).

   d. Tony Smith

Tony Smith's 2015 and 2016 tax returns were prepared at the QA Tax Service store in Dunn, N.C. (Tony Smith Tax Returns (DE 32–39, 32–41)). Defendant Lewis prepared the 2016 tax return. (T. Smith Dep. (DE 32–27) at 19:13-14; Tony Smith Tax Returns (DE 32–41)). Even though Tony Smith did not donate to charity in 2015 and 2016 and had no more than $520 each year in job related expenses, (T. Smith Dep. (DE 32–27) at 7:10-12; 8:18-9:21), the Schedule A attached to Tony Smith's 2015 tax return falsely reported that Smith donated $4,501 to charity and incurred $9,605 in unreimbursed employee business expenses, including purportedly driving a total of 19,999 miles in 2015, of which 10,639 miles were purportedly for his job, and $3,001 in purported meals and entertainment expenses. (T. Smith Dep. at 23:23-30:5; Tony Smith Tax Returns (DE 32–39)). The preparer also falsely claimed that Tony Smith spent $1,021 on a cell phone for his job. (T. Smith Dep. at 23:23-30:5; Tony Smith Tax Returns (DE 32–39)). Defendant Lewis made similar false statements when preparing Tony Smith's 2016 tax return. (T. Smith Dep. (DE 32–27) at 19:13-20:13, 34:8-39:3; Tony Smith Tax Returns (32–41)).

   e. Clentis Smith

Defendant Lewis prepared Clentis Smith's 2015 and 2016 federal income tax returns. (C. Smith Dep. (DE 32–26) at 8:23-9:1; Clentis Smith Tax Returns (DE 32–35, 32–36)). On the Form 2106 attached to Clentis Smith's 2015 tax return, defendant Lewis falsely reported that Clentis Smith incurred $7,433 in job-related vehicle expenses, and falsely claimed that Clentis Smith drove her personal vehicle 19,999 miles, of which 12,927 miles were for business use. (C. Smith Dep. (DE 32–26) at 13:12-14:4, 14:22-15:11, 17:6-18:14; Clentis Smith Tax Returns (DE 32–35)). Defendant Lewis also falsely reported that Clentis Smith incurred $2,001 in meals and entertainment expenses

for her job. (C. Smith Dep. (DE 32–26) at 19:9-20:6; Clentis Smith Tax Returns (DE 32–35)).

Defendant Lewis falsely reported on the Schedule A attached to Clentis Smith's 2015 tax return that Smith donated $5,501 to charity in 2015, when she did not and did not provide this reported amount to defendant Lewis. (C. Smith Dep. (DE 32–26) at 20:7-15, 20:25-21:3; Clentis Smith Tax Returns (DE 32–35)). Defendant Lewis made similar false statements when preparing the Form 2106 attached to Clentis Smith's 2016 tax return. (C. Smith Dep. (DE 32–26) at 19:9-20:6, 22:6-23:14, 23:24-24:14; Clentis Smith Tax Returns (DE 32–36)).

   f. Sue Brewington

Sue Brewington had her 2013, 2014, 2015, and 2016 federal income tax returns prepared at the tax preparation store in Dunn, N.C. (Brewington Tax Returns (DE 32–42, 32–44, 32–46, 32–48). Despite having only small expenses for shoes not entirely reimbursed by her employer, (Brewington Dep. (DE 32–10) at 8:2-10:8), the preparer reported on the Schedule A attached to Brewington's 2013 tax return a purported tax that Brewington did not incur and could not explain (classified on the return as a "3750" type of other deductible tax, in the amount of $3,750) and $12,679 in fabricated unreimbursed employee business expenses. (Brewington Dep. (DE 32–10) at 27:5-25, 28:18-30:8; Brewington Tax Returns (DE 32–42)). As a result of these false claims, Brewington's 2013 tax return claimed a bogus refund in the amount of $3,341. (See Brewington Tax Returns (DE 32–42)).

The preparer falsely reported on the Schedule A attached to Brewington's 2014 tax return that Brewington donated $2,777 to charity, when Brewington did not and did not inform the preparer that she donated that amount to charity, and also falsely reported that Brewington incurred $9,580 in unreimbursed employee business expenses related to her job. (Brewington Dep. (DE 32–10) at 33:2-9, 34:2-7, 34:12-38:21, 40:18-41:7; Brewington Tax Returns (DE 32–44)). These false

job-related expenses including business miles, meals and entertainment expenses, and a cell phone expense, which Brewington did not incur and never discussed with the preparer. (Brewington Dep. (DE 32–10) at 33:2-9, 34:2-7, 34:12-38:21, 40:18-41:7; Brewington Tax Returns (DE 32–44)). As a result of these false claims, Brewington's 2014 tax return claimed a bogus refund in the amount of $3,121. (See Brewington Tax Returns (DE 32–44)). The preparer made similar false representations on the Schedule A attached to Brewington's 2015 and 2016 tax returns. (Brewington Dep. (DE 32–10) at 33:2-9, 34:2-7, 34:12-38:21, 40:18-41:7, 44:17-22, 47:18-49:12, 49:19-52:3; Brewington Tax Returns (DE 32–46, 32–48)).

g.      Jerome Jones

Defendant Lewis prepared the 2016 federal income tax return of Jerome Jones. (Jones Tax Return (DE 32–56)). Jones does not have to travel for his job, and does not have to use his personal car for work purposes. (Jones Dep. (DE 32–17) at 10:5-20, 16:4-6). Aside from buying steel-toed boots, Jones does not incur expenses related to his job, as his employer provides him with protective equipment. (Jones Dep. (DE 32–17) at 23:10-25:8, 25:16-19). Jones made small donations to charity in 2016. (Jones Dep. (DE 32–17) at 28:1-20, 28:4-29:4). Defendant Lewis falsely reported on the Schedule A of Jones' 2016 tax return that Jones donated $2,001 to charity in 2016, a number that Jones did not provide to defendant Lewis and never discussed with defendant Lewis. (Jones Dep. (DE 32–17) at 29:5-25; Jones Tax Return (DE 32–56)). Defendant Lewis also falsely reported on the Schedule A attached to Jones' 2016 tax return that Jones incurred $7,738 in unreimbursed employee business expenses related to his job, including for uniforms, a cell phone ($1,200), meals and entertainment expenses ($2,111), parking fees and tolls ($1,001), and a vehicle expense ($3,379). (Jones Dep. (DE 32–17) at 30:1-24, 31:4-24, 32:11-21, 35:6-37:12, 37:17-39:15; Jones Tax Return (DE 32–56)). With respect to the false vehicle expense claimed, defendant Lewis

reported that Jones drove his vehicle 19,999 miles during the year, of which 6,999 miles were job-related. (Jones Tax Return (DE 32–56)). Jones did not discuss these types of expenses with defendant Lewis and did not provide these amounts to him. (Jones Dep. (DE 32–17) at 31:4-6, 32:11-15, 35:10-14, 36:7-18).

h.    Richard Blue

Defendant Lewis prepared Richard Blue's 2015 and 2016 federal income tax returns. (Blue Tax Returns (DE 32–37, 32–38). Blue commutes from his home to his job but does not have to travel for work. (Blue Dep. (DE 32–9) at 14:15-21). Blue does not incur any travel-related or meals and entertainment related expenses for his job, and does not have to pay for uniforms for his job, although his employer deducts some costs for tools. (Blue Dep. (DE 32–9) at 15:16-23, 16:24-17:13). Blue's job does not require him to use a cell phone, and Blue does not own a cell phone. (Blue Dep. (DE 32–9) at 17:18-25). On the Schedule A and the Form 2106 attached to Blue's 2015 tax return, Defendant Lewis falsely reported that Smith incurred $9,870 in unreimbursed employee business expenses. (Blue Tax Returns (DE 32–37)). This included $2,529 in job-related vehicle expenses (based on Blue purportedly driving his personal vehicle 19,999 total miles, of which 4,399 miles were for business use), $1,544 in parking fees, tolls, and transportation, $2,579 in other business expenses, and $2,193 in meals and entertainment expenses. (Blue Dep. (DE 32–9) at 19:8-22:23; Blue Tax Returns (DE 32–37)). Blue did not incur such expenses and did not provide these amounts to defendant Lewis. (Blue Dep. (DE 32–9) at 19:8-22:23; Blue Tax Returns (DE 32–37)). Defendant Lewis also falsely reported that Blue incurred expenses for uniforms in the amount of $801, tools in the amount of $299, and a cell phone in the amount of $1,021, when Blue did not even own a cell phone or have to wear special uniforms to work. (Blue Dep. (DE 32–9) at 22:25-23:17; Blue Tax Returns (DE 32–37)). As a result of these false claims,

Blue's 2015 tax return claimed a bogus refund in the amount of $1,494. (See Blue Tax Returns (DE 32–37)). Defendant Lewis made similar false representations on the Schedule A and the Form 2106 attached to Blue's 2016 tax return. (Blue Dep. (DE 32–9) at 25:8-26:3, 26:10-27:27; Blue Tax Returns (DE 32–38)).

    i.    Perry Parker

Perry Parker had his 2014, 2015, and 2016 federal income tax returns prepared at the tax preparation store in Dunn, N.C. (Parker Tax Returns (DE 32–49, 32–50, 32–51)). Defendant Lewis prepared Parker's 2015 and 2016 tax returns. (Parker Tax Returns (DE 32–49, 32–50)). Parker has a cell phone through which his employer can contact him, and Parker pays for that. (Parker Dep. (DE 32–22) at 18:5-11). Parker did not incur any other expenses for his job, as his employer covered expenses such as gas and provided him with boots. (Parker Dep. (DE 32–22) at 22:6-16). As a truck driver, Parker does not drive his work truck anywhere that requires him to stay overnight. (Parker Dep. (DE 32–22) at 9:13-23, 13:10-13, 23:11-18).

On the Schedule A attached to Parker's 2015 tax return, defendant Lewis falsely reported additional mortgage interest in the amount of $1,884 that Parker did not actually pay, and reported it on the tax returns as home mortgage interest not reported on a Form 1098. (Parker Dep. (DE 32–22) at 44:13-46:16; Parker Tax Returns (DE 32–50)). Defendant Lewis also falsely reported on the 2015 tax return that Parker incurred $5,061 in unreimbursed employee business expenses. (Parker Tax Returns (DE 32–50)). This included $501 in uniform expenses and $1,781 in vehicle expenses, where defendant Lewis claimed that Parker drove his vehicle 19,999 total miles, of which 3,098 were purported business miles, the exact same mileage amounts that defendant Lewis reported on Parker's 2016 tax return. (Parker Dep. (DE 32–22) at 50:13-23, 53:2-54:10; Parker Tax Returns (DE 32–49, 32–50)). Defendant Lewis and another preparer at the store in Dunn, N.C. made similar

false claims on Parker's Schedule A for his 2014 and 2016 tax returns. (Parker Dep. (DE 32–22) at 33:17-34:24, 35:10-37:23, 38:4-38:25, 59:21-60:4, 60:10-15, 61:18-62:8; Parker Tax Returns (DE 32–49, 32–51)).

j.      Angelo McLean

Angelo McLean had his 2013 and 2014 federal income tax returns prepared at the Dunn, N.C. tax preparation store. (McLean Dep. (DE 32–19) at 11:7-24; McLean Tax Returns (DE 32–119, 32–120). McLean is employed supervising cemeteries, and uses a city-owned truck when he has to go from one cemetery to another. (McLean Dep. (DE 32–19) at 10:4-11:6). The preparer falsely claimed deductions totaling $29,159 on the Schedule A attached to McLean's 2014 tax return. (McLean Tax Returns (DE 32–119)). The preparer falsely claimed that McLean donated $3,521 to charity, when McLean made no such contributions and did not tell the preparer that he made contributions in that amount. (McLean Dep. (DE 32–19) at 16:10-19:22). The preparer falsely reported that McLean incurred $13,843 in unreimbursed employee business expenses in 2014, when McLean did not incur any such expenses. (McLean Dep. (DE 32–19) at 20:8-23:2; McLean Tax Returns (DE 32–119)).

The fabricated expenses included $6,663 in vehicle expenses, even though McLean only drove a city-provided vehicle when working. (McLean Dep. (DE 32–19) at 20:24-22:4). The preparer falsely claimed that McLean drove a total of 19,999 miles in 2014, of which 11,899 were purportedly business miles, amounts that McLean never provided to the preparer. (McLean Dep. (DE 32–19) at 25:12- 26:23, 27:22-29:3; McLean Tax Returns (DE 32–119)). The preparer did not explain to McLean what qualifies as an unreimbursed employee business expense. (McLean Dep. (DE 32–19) at 19:23-20:3, 26:24-13, 29:4-7). The preparer also falsely claimed that McLean incurred $4,119 in expenses for overnight travel related to his job, $2,001 in additional business

15

expenses, and $2,119 in meals and entertainment expenses. (McLean Dep. (DE 32–19) at 22:7-24:14, 24:19-25:11; McLean Tax Returns (DE 32–119)). The preparer made similar false statements on the Schedule A attached to McLean's 2013 tax return. (McLean Dep. (DE 32–19) at 34:6-41:17; McLean Tax Returns (DE 32–120)).

        k.     Thomas and Susan Hudgins

Thomas and Susan Hudgins had their 2013 and 2014 federal income tax returns prepared at the Dunn, N.C. tax preparation store. (Hudgins Dep. (DE 32–26) at 12:11-24; Hudgins Tax Returns (DE 32–108, 32–109)). The preparer falsely claimed on the Schedule A attached to the Hudgins' 2013 tax return that the Hudgins donated $2,001 to charity, when they did not. (Hudgins Dep. (DE 32–26) at 34:7-22). The preparer asked the Hudgins how far they drove to and from work, and also how far they drove to and from their daughter's high school. (Hudgins Dep. (DE 32–26) at 16:4-23, 35:5-9). The preparer then falsely reported on the Schedule A that Hudgins incurred unreimbursed employee business expenses in the amount of $13,220, based on a purported 14,239 business miles driven. (Hudgins Dep. (DE 32–26) at 34:23-37:21; Hudgins Tax Returns (DE 32–108)). The preparer also falsely claimed that Hudgins incurred $1,001 in parking fees and tolls, $3,001 in overnight travel expenses, and $1,173 in other job-related expenses, none of which Hudgins incurred. (Hudgins Dep. (DE 32–26) at 37:16-38:14).

Similarly, on the Hudgins' 2014 tax return, the preparer falsely reported unreimbursed employee business expenses in the amount of $30,848. (Hudgins Dep. (DE 32–26) at 41:4-43:3; Hudgins Tax Returns (DE 32–109)). The basis for that amount was not reported on the tax return, and Hudgins did not know what that amount could represent. (Hudgins Dep. (DE 32–26) at 42:23-43:3; Hudgins Tax Returns (DE 32–109)). As a result of these false claims, the Hudginses' 2014 tax return claimed a bogus refund in the amount of $4,142. (See Hudgins Tax Returns (DE

32–109)).

l.      Tara Moulden

Tara Moulden (McIver) had her 2013 federal income tax return prepared at the tax preparation store in Dunn, N.C. (Moulden Tax Return (DE 32–110)). Moulden did not incur expenses for her job, other than using her personal car to drive between offices "five times a month maybe." (Moulden Dep. (DE 32–21) at 12:3-22). On the Schedule A attached to Moulden's 2013 tax return, the preparer falsely claimed that Moulden incurred $21,820 in unreimbursed employee business expenses. (Moulden Dep. (DE 32–21) at 23:1-24; Moulden Tax Return (DE 32–110)). The preparer also claimed a personal expense for a home roofing repair in the amount of $4,300 as an "other" deductible expense on the Schedule A. (Moulden Dep. (DE 32–21) at 23:25-24:17; Moulden Tax Return (DE 32–110)). As a result of these false claims, Moulden's 2013 tax return claimed a bogus refund in the amount of $11,927. (See Moulden Tax Return (DE 32–110)).

m.      Jennifer and Samuel English

Defendant Salmon prepared Jennifer and Samuel English's 2014 and 2015 federal income tax returns, although Defendant Salmon is not identified as the preparer of the 2014 tax return. (English Dep. (DE 32–15) at 8:6-9, 8:22-9:3; English Tax Returns (DE 32–66, 32–67)). The Englishes were not asked any questions about common deductions reported on a Schedule A, such as charitable contributions or medical expenses, and do not have a mortgage. (English Dep. (DE 32–15) at 10:18-11:9). On the Englishes' 2014 tax return, defendant Salmon claimed itemized deductions in the amount of $13,600, without attaching a Form Schedule A to the return. (English Tax Returns (DE 32–66)). As a result of these and other false claims, the Englishes' 2014 tax return claimed a bogus refund in the amount of $1,161. (See English Tax Returns (DE 32–66)). Similarly, on the Englishes' 2015 tax return, defendant Salmon claimed itemized deductions in the amount of

$13,850, without attaching a Form Schedule A to the return. (English Tax Returns (DE 32–67)). As a result of these and other false claims, the Englishes' 2015 tax return claimed a bogus refund in the amount of $584. (See English Tax Returns (DE 32–67)).

Defendant Salmon believes that she received training from Eddleman regarding preparing Forms Schedule A, including claiming business mileage. (Salmon Dep. (DE 32–25) at 57:23-58:18). Defendant Salmon does not specifically recall the training that she received, nor can she fully explain what qualifies as a deductible business mile (as opposed to a non-deductible commuting mile) on a Form Schedule A. (Salmon Dep. (DE 32–25) at 58:19-59:19). Defendant Lewis was similarly instructed by Eddleman. (See Lewis Dep. (DE 32–18) at 41:24-42:19).

2.      Fabricating Schedule C Business Income and Expenses

In addition to problems with Schedule A filings, defendants and those acting at their direction or with their knowledge and consent prepared tax returns that report either non-existent businesses and related income and/or expenses on Forms Schedule C ("Profit or Loss from Business, Sole Proprietorship"), or fabricated expenses and/or income for customers who actually own a small business. Several examples illustrate this practice by defendants.

a.      Donameche Ray

As discussed above, defendant Salmon prepared the 2012, 2013, and 2014 federal income tax returns of Donameche Ray. (Ray Dep. (DE 32–23) at 10:15-24, 12:19-13:11; Ray Tax Returns (DE 32–123, 32–124, 32–125)). Ray was employed as a car detailer, and also worked on his own doing detailing for additional income. (Ray Dep. (DE 32–23) at 9:25-10:14). On Ray's 2014 tax return, Salmon falsely claimed that Ray lost $14,341 through a detailing business, where Ray did not provide this information to defendant Salmon. (Ray Dep. (DE 32–23) at 13:12-15:3; Ray Tax Returns (DE 32–123)). Defendant Salmon falsely reported on the Schedule C attached to Ray's

2014 tax return that Ray incurred expenses for insurance ($1,032), repairs and maintenance ($561), supplies ($607), utilities ($637), and a cell phone ($1,208). (Ray Dep. (DE 32–23) at 16:16-17:1; Ray Tax Returns (DE 32–123)).  Defendant Salmon also falsely claimed a car and truck expense in the amount of $11,199, based on Ray purportedly driving 19,999 business miles for his car detailing business.  (Ray Dep. (DE 32–23) at 18:1-25; Ray Tax Returns (DE 32–123)).  Defendant Salmon did not review this information with Ray, who was "at a loss" when reviewing his tax return at his deposition. (Ray Dep. (DE 32–23) at 18:11-25).  As stated above, Ray's 2014 tax return claimed a bogus refund in the amount of $3,975.  (See Ray Tax Returns (DE 32–123)).  Defendant Salmon made similar false statements on the Schedule C attached to Ray's 2013 and 2012 tax returns.  (Ray Dep. (DE 32–23) at 16:11-15, 27:10-23, 28:1-30:18, 30:19-32:18, 40:23-43:5; Ray Tax Returns (DE 32–124, 32–125)).

b.      Christopher Upchurch

As discussed above, Christopher Upchurch's 2015 federal income tax return was prepared by defendants.  (Upchurch Dep. (DE 32–28) at 8:2-9:6, 23:2-10; Upchurch Tax Returns (DE 32–71)).  Defendant Lewis falsely reported on the Schedule C attached to the 2015 tax return that Upchurch owned or operated a "sales" business that received gross receipts in the amount of $10 but incurred expense for repairs and maintenance in the amount of $5,200, for a loss of $5,190. (Upchurch Tax Returns (DE 32–71)).  Upchurch had no such business, and could only guess that the maintenance and repair expense listed was for repairs he made to his home, although he did not provide any information to Lewis about the cost of those home repairs. (Upchurch Dep. (DE 32–28) at 33:3-34:22).

c.      Kevin and Rita Chambers

Defendant Salmon prepared the 2012, 2013, and 2014 tax returns of Kevin and Rita

Chambers. (R. Chambers Dep. (DE 32–13) at 9:12-16, 12:10-25; R. Chambers Tax Returns (DE 32–87, 32–88, 32–89, DE 32–114, DE 32–115, DE 32–118)). In 2014, Rita Chambers worked at a retail store and also had a cake business that she operated, through which she made two to three hundred dollars. (R. Chambers Dep. (DE 32–13) at 16:1-19:5)). Defendant Salmon falsely reported on the Schedule C attached to Rita Chambers' 2014 tax return that Rita Chambers lost $13,158 through a cupcake business. (R. Chambers Dep. (DE 32–13) at 19:10-20:14, 21:1-25:21, 26:13-21, 27:19-28:6; R. Chambers Tax Returns (DE 32–114)). This reported fabricated business loss included false supply expenses in the amount of $2,397 and false vehicle expenses in the amount of $10,290 (based on a purported 18,375 business miles driven selling cakes). (R. Chambers Dep. (DE 32–13) at 22:12-25:21; Chambers Tax Returns (DE 32–114)). Rita Chambers did not provide this information to defendant Salmon and was unaware that defendant Salmon was reporting it on the tax return. (R. Chambers Dep. (DE 32–13) at 15:12-21). As a result of these and other false claims, Kevin and Rita Chambers' 2014 tax return claimed a bogus refund in the amount of $5,861. (See Chambers Tax Returns (DE 32–114)). Defendant Salmon made similar false statements on the Schedule C attached to Rita Chambers' 2013 tax return that Rita Chambers lost $15,720 through her cake business. (R. Chambers Dep. at 29:25-30:19, 32:2-37:2, 45:17-49:6, 50:16-18; Chambers Tax Returns (DE 32–115, 32–118)).

d. James and Kristopher Motley

Defendant Salmon prepared the 2014 and 2015 tax returns of James and Kristopher Motley. (Motley Dep. (DE 32–20) at 8:17-23; Motley Tax Returns (DE 32–57, 32–58). Motley works for the postal service, and his wife, Kristopher, does hair out of their home. (Motley Dep. (DE 32–20) at 7:5-8:4). Motley dropped off his Form W-2, IDs, and social security cards to Defendant Salmon, who did not ask many questions, and Motley returned to pick up the completed tax return. (Motley

Dep. (DE 32–20) at 8:24-9:25, 11:16-12:5).  Defendant Salmon did not ask Motley or his wife about how much money his wife made or lost doing hair. (Motley Dep. (DE 32–20) at 9:13-22, 12:3-5).

Defendant Salmon falsely reported on the Schedule C attached to the Motleys' 2014 tax return that Kristopher Motley lost $14,019 through her hair business. (Motley Dep. (DE 32–20) at 12:21-13:21; Motley Tax Returns (DE 32–57)).  Motley lost "nowhere near that much," and Defendant Salmon never asked for any documents showing income or expenses related to the business. (Motley Dep. (DE 32–20) at 13:6-21, 14:1-7).  Similarly, defendant Salmon falsely reported on the Schedule C attached to the Motleys' 2015 tax return that Kristopher Motley lost $2,994 through her hair business, based on purported gross receipts received in the amount of $500 and expenses totaling $3,494, for advertising ($150), supplies ($1,500), travel ($500), and a cell phone ($1,344). (Motley Dep. (DE 32–20) at 14:8-17:22; Motley Tax Returns (DE 32–58)).

e.     Jennifer and Samuel English

As discussed above, defendant Salmon prepared Jennifer and Samuel English's 2014 and 2015 federal income tax returns, although defendant Salmon is not identified as the preparer of the 2014 tax return. (English Dep. (DE 32–15) at 8:6-9, 8:22-9:3; English Tax Returns (DE 32–66, 32–67)).  Both Jennifer and Samuel English work for a moving and storage company.  (English Dep. (32–15) at 7:14-23).  Neither Jennifer nor Samuel English own or operate a business or provide any cleaning services, and defendant Salmon did not ask the Englishes any questions about whether they owned a business. (English Dep. (DE 32–15) at 7:24-8:5).  Schedule C attached to the 2014 tax return, Defendant Salmon falsely reported that Samuel English had a cleaning business that lost $6,800, when he did not own or operate a business, and did not incur the claimed expenses. (English Dep. (DE 32–15) at 14:1-3, 14:10-17, 14:20-15:2, 16:5; English Tax Returns (DE 32–66)).  Defendant Salmon made similar false statements on the Schedule C attached to the Englishes' 2015

tax return. (English Dep. (DE 32–15) at 16:5-15; English Tax Returns (DE 32–67)).

> f.     William and Rebecca Byrd

William and Rebecca Byrd's 2014 and 2015 federal income tax returns were prepared at the tax preparation store in Dunn, N.C. (Byrd Tax Returns (DE 32–72, 32–73)). Defendant Salmon is identified as the paid preparer of the 2015 tax return, although Byrd recalls two men, not defendant Salmon, preparing his tax returns. (Byrd Dep. (DE 32–11) at 15:9-16:11, 21:7-15; Byrd Tax Returns (DE 32–73)). William Byrd worked for a hog farm maintenance company, and also earned some income doing tattoos, but earned no more than $4,000 annually, which he made known to the preparers. (Byrd Dep. (DE 32–11) at 8:25-9:13, 10:25-12:4). The preparer falsely reported on the Schedule C attached to the 2014 tax return that William Byrd received gross receipts in the amount of $16,501 for doing tattoos, which Byrd called an "astronomical number." (Byrd Dep. (DE 32–11) at 17:18-18:18; Byrd Tax Returns (DE 32–72)). While the preparer of Byrd's 2015 tax return reported Byrd's income received through his job with his family's hog farm maintenance business, the preparer reported false expenses on the Schedule C attached to the tax return. (Byrd Dep. (DE 32–11) at 21:22-25:1; Byrd Tax Returns (DE 32–73)). These fabricated expenses included $5,401 in car and truck expenses, $201 for leasing vehicles or machinery, $1,097 for repairs and maintenance, and $3,100 for deductible meals and entertainment. (Byrd Dep. (DE 32–11) at 21:22-25:1; Byrd Tax Returns (DE 32–73)). The phone expenses exceeded 50% of the income that Byrd received and, when shown these amounts at the deposition, Byrd stated that "it would be ridiculous to have a job like that." (Byrd Dep. (DE 32–11) at 24:3-24:22).

> g.     Michael Zimmerman

Michael Zimmerman had his 2014 and 2015 federal income tax returns prepared at the tax preparation store in Fayetteville, N.C., and defendant Salmon is identified as the preparer of both

returns. (Zimmerman Dep. (DE 32–21) at 8:2-5, 22:19-25; Zimmerman Tax Returns (DE 32–74, 32–75). Zimmerman drove a taxi part-time, was employed at Smithfield, and had his own home improvement business. (Zimmerman Dep. (DE 32–21) at 8:6-9:7, 9:13-11:8). Zimmerman typically made around $3,500 to $5,000, after expenses, through his home improvement business. (Zimmerman Dep. (DE 32–21) at 11:13-21:1). Zimmerman estimates that he made around $3,500 through his business in 2015. (Zimmerman Dep. (DE 32–21) at 12:25-13:8). On the Schedule C attached to the 2014 tax return, defendant Salmon falsely reported that Zimmerman only received $1,317 in gross receipts through his home improvement business, when the actual amount was more. (Zimmerman Dep. (DE 32–21) at 17:11-18:17; Zimmerman Tax Returns (DE 32–74)). Defendant Salmon also falsely reported that Zimmerman incurred $11,881 in expenses, including for advertising ($150), vehicle expenses ($7,613, based on 13,594 purported business miles driven), repairs and maintenance ($1,354), supplies ($1,400), and travel ($1,364), which was information that was not accurate and that Zimmerman did not provide to defendant Salmon. (Zimmerman Dep. (DE 32–21) at 18:18-20:11; Zimmerman Tax Returns (DE 32–74)). Defendant Salmon made similar false statements on the Schedule C attached to Zimmerman's 2015 tax return. (Zimmerman Dep. (DE 32–21) at 12:25:13:8, 22:7-23:11; Zimmerman Tax Returns (DE 32–75)).

   h. Christy Elliott

   Christy Elliott had her 2013, 2014, 2015, and 2016 tax returns prepared at the tax preparation store in Dunn, N.C. (Elliott Dep. (DE 32–14) at 16:10-17:20; Elliott Tax Returns (DE 32–52, 32–53, 32–54, 32–55)). Defendant Lewis prepared Elliott's 2016 tax return. (Elliott Dep. (DE 32–14) at 27:11-28:2; Elliott Tax Returns (DE 32–52)). Defendant Lewis falsely claimed on the Schedule C attached to Elliott's 2016 tax return that she earned $6,119 braiding hair, far more than the $150 or $200 per year she actually earned. (Elliott Dep. (DE 32–14) at 11:10-12:1, 21:15-20, 23:16-25:6,

29:2-30:1; Elliott Tax Returns (DE 32–52)).  Elliott did not provide this information to Lewis. (Elliott Dep. (DE 32–14) at 31:18-23).  Defendants made the same type of false claim on Elliott's 2015 and 2014 tax returns as well.  (See Elliott Dep. (DE 32–14) at 37:14-39:6, 53:6-54:9; Elliott Tax Returns (DE 32–53, 32–54)).

      i.     Najib Al Shami

Defendant Salmon prepared the 2012 and 2013 tax returns of Najib Al Shami.  (Al Shami Tax Returns (DE 32–121, 32–122)).  Al Shami met Defendant Salmon at the grocery store where Al Shami works. (Al Shami Dep. (DE 32–8) at 10:1-14, 11:1-9).  Al Shami only worked at the grocery store, is not a mechanic, but one time repaired defendant Salmon's car. (Al Shami Dep. (DE 32–8) at 11:10-12:10).  Al Shami never told defendant Salmon that he worked as a mechanic. (Al Shami Dep. (DE 32–8) at 12:5-10, 14:23-15:12).  However, defendant Salmon falsely reported on the Schedule C attached to Al Shami's 2012 tax return that Al Shami owned a mechanic business, through which he purportedly received gross receipts totaling $1,501 (a number commonly reported on tax returns prepared that year) and incurred expenses totaling $9,714, for a reported loss of $8,213.  (Al Shami Tax Returns (DE 32–121)).  The false expenses included $8,664 in vehicle expenses, based on purported mileage totaling 15,611, and a cell phone expense of $481, when Al Shami did not have any such expenses and was not questioned about these types of expenses. (Al Shami Dep. (DE 32–8) at 14:10-17:21; Al Shami Tax Returns (DE 32–121)).  Defendant Salmon falsely reported similar losses on Al Shami's 2013 tax return.  (Al Shami Dep. at 19:8-24, 20:6-21, 21:18-22-18, 23:14:24:3, 24:21-25:5; Al Shami Tax Returns (DE 32–122)).

      j.     Tamara Albright

Tamara Albright's 2014 and 2015 federal income tax returns were prepared at the tax preparation store in Dunn, N.C.  (Albright Tax Returns (DE 32–68, 32–69)).  Albright operated a

house cleaning business in 2014 and part of 2015, where she made less than $5,000 annually. (Albright Dep. (DE 32–7) at 6:19-21, 10:1-11:9). Albright stopped cleaning houses in June 2015, and earned less that year than in 2014. (Albright Dep. (DE 32–7) at 11:9-18). Defendant Lewis reported on the Schedule C attached to Albright's 2014 tax return that Albright received $3,001 in gross receipts from her house cleaning business, and incurred $551 in expenses. (Albright Tax Returns (DE 32–68)). Albright does not recall what her exact income was that year, but believes that her expenses were greater than $551. (Albright Dep. (DE 32–7) at 19:20-20:18, 21:13-25). As a result of this and other false claims, Albright's 2014 tax return claimed a bogus refund in the amount of $6,044. (See Albright Tax Returns (DE 32–68)). Defendant Lewis made similar false representations on Albright's 2015 tax return by overstating Albright's income on her Schedule C, overstating her income. (See Albright Dep. (DE 32–7) at 24:12-25:2; Albright Tax Returns (DE 32–69)).

### 3. Fabricated Claims for the Earned Income Tax Credit

In addition to making false statements on Schedules A and C, defendants and their preparers also routinely fabricated information, such as household help income, to increase the Earned Income Tax Credit ("EITC") of their customers, thereby increasing their tax refund. Several examples illustrate this practice.

#### a. Christy Elliott

As discussed above, Christy Elliott had her 2013, 2014, 2015, and 2016 tax returns prepared at the tax preparation store in Dunn, N.C. (Elliott Dep. (DE 32–14) at 16:10-17:20; Elliott Tax Returns (DE 32–52, 32–53, 32–54, 32–55)). Defendant Lewis prepared Elliott's 2016 tax return. (Elliott Dep. (DE 32–14) at 27:11-28:2; Elliott Tax Returns (DE 32–52)). In addition to falsely

claiming expenses on Elliott's Schedule C, defendants reported on Elliott's 2013, 2014, 2015, and 2016 tax returns that she had received household help income when Elliott did not receive any wages or income for such services. (See Elliott Tax Returns (DE 32–52, 32–53, 32–54, 32–55)). As a result these and other false statements, Elliott obtained an EITC of $3,250 in 2013, $3,205 in 2015, and $3,373 in 2016. (See Elliott Tax Returns (DE 32–52, 32–53, 32–55)).

   b. Cynthia Rouse

  Defendant Salmon prepared the 2012, 2014, and 2015 tax returns of Cynthia Rouse. (Rouse Tax Returns (DE 32–59, 32–60, 32–62)). In 2012, 2014, and 2015, Rouse lived with other people, including some children, but they were not relatives. (Rouse Dep. (DE 32–24) at 7:11-8:15). When Rouse had her 2012 tax return prepared, she went to the tax preparation store with her landlord and a woman and that woman's child who were staying with Rouse. (Rouse Dep. (DE 32–24) at 8:22-10:3, 11:11-12:13). The child was not related to Rouse. (Rouse Dep. (DE 32–24) at 9:17-9:24).

  On Rouse's 2012 tax return, defendant Salmon claimed the child as a dependent and falsely reported that she was Rouse's niece. (Rouse Dep. (DE 32–24) at 12:14-13:20; Rouse Tax Returns (DE 32–59)). The child's mother was present when Rouse's tax return was prepared, and defendant Salmon did not ask Rouse any questions about the existence of any familial relationship between Rouse and the child. (Rouse Dep. (DE 32–24) at 11:7-13:20). On Rouse's 2012 tax return, defendant Salmon also falsely reported, as wages, fabricated household help income purportedly earned by Rouse in the amount of $6,071, when Rouse did not receive any wages or any other income in that amount (she was only employed doing home health care, for which she received a Form W-2) and did not tell defendant Salmon that she earned such income. (Rouse Dep. (DE 32–24) at 13:21-14:9, 14:18-15:1; Rouse Tax Returns (DE 32–59)). Defendant Salmon made similar false claims on Rouse's 2014 and 2015 tax returns, enabling Rouse to claim the EITC. (Rouse Dep. (DE

26

32–24) at 18:5-19:9, 20:14-24, 24:8-25:18; Rouse Tax Returns (DE 32–60, 32–62)).

        c.     Tamara Albright

Tamara Albright's 2014 and 2015 federal income tax returns were prepared at the tax preparation store in Dunn, N.C. (Albright Tax Returns (DE 32–68, 32–69)). In both years, defendant Lewis failed to report social security income, while also falsely reporting household help income for Albright. (Albright Dep. (DE 32–7) at 18:3-19, 22:1-17, 23:3-16, 24:5-11; Albright Tax Returns (DE 32–68, 32–69)). As a result of these and other false claims, Albright's tax returns claimed EITC of $5,390 in 2014 and $5,548 in 2015. (Albright Tax Returns (DE 32–68, 32–69)).

        d.     Raul Campos

Raul Campos' 2014 federal income tax return identifies defendant Lewis as the paid preparer, and 2015 federal income tax return identifies defendant Salmon as the paid preparer. (Campos Tax Returns (DE 32–64, 32–65)). It is not clear, however, if defendant Lewis and defendant Salmon prepared the tax returns that identifies them as the paid preparer, or if defendant Salmon prepared the 2014 tax return while defendant Lewis prepared the 2015 tax return. (Campos Dep. (DE 32–12) at 8:24-9:1, 12:16-25, 24:21-25:22). The preparer of Campos' 2014 tax return falsely reported household help income, identified as wages on line 7 of the Form 1040, in the amount of $2,501. (Campos Tax Returns (DE 32–64)). Campos had no such income. (Campos Dep. (DE 32–12) at 16:1-17:22, 18:1-3). The preparer claimed an EITC in the amount of $4,570 on Campos' 2014 tax return. (Campos Tax Returns (DE 32–64)). Similarly, the preparer of Campos' 2015 tax return falsely reported household help income, identified as wages on line 7 of the Form 1040, in the amount of $2,001. (Campos Dep. (DE 32–12) at 18:6-19:6; Campos Tax Returns (32–65)).

Defendant Salmon did not know why several tax returns that she prepared all reported

Household Help income in the exact same amount of $1,900, nor could she explain the nature or source of that income. (Salmon Dep. (DE 32–25) at 54:3-55:8; e.g., Gregg Tax Returns (DE 32–78), Tameeji Smith Tax Returns (DE 32–79), McGregor Tax Returns (DE 32–80)).  Defendant Salmon could not recall the requirements for claiming the Earned Income Tax Credit. (Salmon Dep. (DE 32–25) at 47:13-49:18).  According to defendant Salmon, she "didn't use the knowledge to prepare tax returns," but rather, "[w]hen you put the numbers in the software, it adds everything up." (Salmon Dep. (DE 32–25) at 47:8-48:10).

D.     Defendants' Profit From False Tax Returns

Defendants (or the businesses where they worked, BPTS and QA Tax Service) contracted with tax refund processors—BPTS, LLC contracted with Refundo, Inc. in 2015 and QA Tax Service, Inc. contracted with Santa Barbara Tax Products Group, LLC in 2016 and 2017—to process their customers' tax refunds and, simultaneously, to deduct from those refunds the defendants' tax preparation fees. (E.g., DE 32–129, 32–130, 32–131, 32–132).

Plaintiff asserts that defendants' underlying business model and their actual return preparation practices involved falsely claiming: (1) unreimbursed employee business expenses (EBE) on Forms Schedule A ("Category A"); (2) business income and/or expenses on Forms Schedule C ("Category B"); and (3) the Earned Income Tax Credit ("Category C").  (Statement of Facts (DE 30) ¶ 394).  For purposes of calculating defendants' profit, there is no overlap of either tax returns in Categories A, B, and C; each category contains separate and distinct tax returns and related fees. (See Reinken Decl. ¶¶ 10-11).

In 2015 and 2016, fees for tax returns with defendant Salmon's Electronic Filing Identification Number ("EFIN") included $3,779 for returns claiming employee business expenses on Schedule A, $38,707 for returns falsifying business income and/or expenses on Schedule C, and

$32,357.73 in false claims generating EITC. (<u>See</u> Reinken Decl. (DE 32–6) ¶¶ 9-19). Defendant Salmon never identified the amount of fees she received, or the amount of salary she received while working at BPTS, LLC and QA Tax Service, Inc. (Applegate Decl. (32–2) ¶ 6). BPTS, LLC did not issue a Form 1099 to defendant Salmon for 2015. (Ruiz Decl. (DE 32–5) ¶ 8). QA Tax Service, Inc. issued a Form 1099 to defendant Salmon for 2016 that stated defendant Salmon was paid $43,500 in 2016. (Ruiz Decl. (DE 32–5) ¶ 7). Although defendant Salmon did not prepare all of the tax returns prepared at the BPTS and QA Tax Service store located in Fayetteville, she profited from the preparation and filing of all of the tax returns prepared at that store. (Statement of Facts (DE 30 ¶ 399)).

In 2015, 2016, and 2017, fees for tax returns with the EFIN associated with the tax preparation store in Dunn, North Carolina used by defendant Lewis and other tax return preparers at that store to file tax returns included $26,122.88 for returns claiming employee business expenses on Schedule A, $34,559.45 for returns falsifying business income and/or expenses on Schedule C, and $44,239.30 in false claims generating EITC. (<u>See</u> Reinken Decl. (DE 32–6) ¶¶ 9-11, 20-31).

According to defendant Lewis, he received between 15% and 20% of the tax preparation fees generated by the Dunn, North Carolina store. (Lewis Dep. (DE 32–18) at 21:14-22:3). Assuming defendant Lewis received only 15% of these fees, defendant Lewis received ill-gotten gains in the amount of $9,947.12 in 2015, $3,521.84 in 2016, and $2,269.28 in 2017, for a total of $15,738.24. BPTS, LLC did not issue a Form 1099 to defendant Lewis for 2015, and QA Tax Service, Inc. has not issued a Form 1099 to defendant Lewis for 2017. (Ruiz Decl. (DE 32–5) ¶ 8). QA Tax Service, Inc. issued a Form 1099 to defendant Lewis for 2016 that stated defendant Lewis was paid $13,000 in 2016. (Ruiz Decl. (DE 32–5) ¶ 7).

Additional facts pertinent to the motion will be discussed below.

**DISCUSSION**

A.    Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Once the moving party has met its burden, the non-moving party must then "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (internal quotation omitted). Only disputes between the parties over facts that might affect the outcome of the case properly preclude the entry of summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party).

"[A]t the summary judgment stage the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. In determining whether there is a genuine issue for trial, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant's] favor." Id. at 255; see United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion.").

Nevertheless, "permissible inferences must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the [factfinder] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace v. Sherwin-Williams Co., 681 F.2d 230, 241 (4th Cir. 1982) (quotations omitted). Thus, judgment as a matter of law is warranted where "the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005). By contrast, when "the evidence as a whole is susceptible of more than one reasonable inference, a [triable] issue is created," and judgment as a matter of law should be denied. Id. at 489-90.

B.     Analysis

Plaintiff seeks a permanent injunction barring defendants from preparing taxes, as well as an order disgorging fees obtained from defendants' systematic false statements on tax returns. The court addresses each remedy in turn.

1.     Permanent Injunction

Plaintiff seeks a permanent injunction against defendants to prevent them from preparing taxes again.

The court may issue an injunction if it finds "(1) that the person has engaged in any conduct subject to penalty under section 6700 ... or section 6701 ..., and (2) that injunctive relief is appropriate to prevent recurrence of such conduct." 26 U.S.C. § 7408. The Internal Revenue Code imposes a penalty on any person who

> (1) aids or assists in, procures, or advises with respect to the preparation or presentation of any portion of a tax return, affidavit, claim or other document; (2) who knows (or has reason to believe) that such portion will be used in connection with a material matter arising under federal tax law; and (3) who knows that such portion (if used) would result in an understatement of the liability for tax of another

31

person.

26 U.S.C. § 6701(a).  The penalty extends liability to individuals for the conduct of subordinates.  See id. § 6701(c).

In this case, plaintiff has established each of the elements required for permanent injunction.  Defendants aided and assisted in, as well as procured, see id. § 6701(c), the preparation of their customer's tax returns by virtue of being tax preparers.  As discussed above, certain portions of these tax returns, such as preparing bogus Forms Schedule A and C, were used in a "material matter," namely calculating customer's tax liability, and the result of defendants' false reporting was consistent understatements of customers' tax liabilities.  Therefore, the court finds that defendants engaged in conduct subject to penalty under 26 U.S.C. § 6701.  This satisfies the first requirement for permanent injunction under 26 U.S.C. § 7408.

In this case, injunctive relief is appropriate to prevent recurrence of such conduct.  Although defendants claim that they do not intend to prepare taxes again, the continuous and systematic nature of their misconduct over the years, combined with the fact that their activities are part of a larger tax fraud scheme whose leadership has changed hands several times, provides sufficient basis to find that an injunction is necessary to prevent recurrence of misconduct.  See United States v. Jean Demesmin and Tonya Chambers, 6:14-cv-01537-ACC-TBS (M.D. Fla. Nov. 16, 2016); United States v. Barwick, 2018 WL 1135414 (M.D. Fla. Feb. 27, 2018), report and recommendation adopted by 2018 WL 1115701 (M.D. Fla Feb. 27, 2018).

Defendants do not offer any opposition to plaintiff's motion, but instead "agree to the permanent injunction." (Def. Brief in Opposition (DE 36) ¶ 1).  In light of the foregoing, the court is satisfied that a permanent injunction is appropriate in this case.  Having reaching this determination, the court does not address plaintiff's additional claims supporting injunction under

26 U.S.C. §§ 7402, 7407. The court adopts the form of injunction and terms thereof proposed by plaintiff.

2. Disgorgement

Plaintiff seeks an order for disgorgement from defendants for fees they obtained resulting from false statements on tax returns they or their subordinates helped prepare.

The court has broad authority to issue orders and judgments "as may be necessary or appropriate for the enforcement of the internal revenue laws." 26 U.S.C. § 7402(a). This includes the remedy of disgorgement. See F.T.C. v. Ross, 743 F.3d 886, 890–91 (4th Cir. 2014) ("Congress' invocation of the federal district court's equitable jurisdiction brings with it the full 'power to decide all relevant matters in dispute and to award complete relief ....'") (quoting Porter v. Warner Holding Co., 328 U.S. 395, 399 (1946)). Where the court finds that a violation of the law has occurred and disgorgement of ill gotten gains is appropriate, "disgorgement need only be a reasonable approximation of profits causally connected to the violation." S.E.C. v. First City Fin. Corp., 890 F.2d 1215, 1231 (D.C. Cir. 1989); cf. In re Gen. Motors Corp., 110 F.3d 1003, 1019 n. 16 (4th Cir. 1997) ("[W]here a 'harm' amount is difficult to calculate, a court is wholly justified in requiring the party in contempt to disgorge any profits it may have received that resulted in whole or in part from the contemptuous conduct."). Where "the Government presented evidence of fabricated amounts on Schedule As, Schedule Cs, and with regard to education credits and other deductions, on 'return after return,' the Court finds it reasonable to use tax returns containing these types of claims to approximate Stinson's unjust enrichment." United States v. Stinson, 239 F. Supp. 3d 1299, 1329 (M.D. Fla. 2017).

Here, defendants engaged in a significant pattern of wrongful conduct such that an order for disgorgement is appropriate. Over several years, defendants repeatedly made false statements on

the tax returns of their customers, increasing tax refunds from which the preparers drew their fees. The facts in this case show that defendants had little interest in accuracy, but great interest in increasing their own bottom line, often without their customer's knowledge. (See, e.g., T. Smith Dep. (DE 32–27) at 20:21-21:14, 39:4-40:7; Brewington Dep. (DE 32–10) at 30-31:18, 40:2-17, 45:5-13; R. Chambers Dep. (DE 32–13) at 14:4-15:19). On the facts presented, defendants engaged in a pattern of wrongful conduct.

Defendants argue in response that they "were mislead and not properly advised of all matters which [they] were asked to do for the company." (Def. Brief in Opposition (DE 36) ¶ 2). Defendants' argument is without merit. The tax returns and depositions submitted to the court show a persistent pattern of misconduct, where defendants and other preparers acting at their direction falsified the tax returns of their customers. No tax preparer can argue that, because they were misled, they believed it was lawful to make unsubstantiated statements about income and expenses out of whole cloth, or to overstate or understate the income or expenses of a taxpayer. (E.g., Elliott Dep. (DE 32–14) at 11:10-12:1, 21:15-20, 23:16-25:6, 29:2-30:1; Elliott Tax Returns (DE 32–52); English Dep. (DE 32–15) at 14:1-3, 14:10-17, 14:20-15:2, 16:5; English Tax Returns (DE 32–66)). Given the recurring fabrications in tax returns for which defendants were ultimately responsible, defendants fail to raise a genuine issue of material fact as to whether or not they made innocent mistakes in their tax preparation.

Moreover, plaintiff's estimate of the amount of fees to be disgorged is a reasonable estimate for both defendants. The District Court for the Middle District of Florida considered evidence of the same patterns of wrongdoing in a lawsuit against Eddleman, Morales, and QA Tax Service, Inc., and ordered disgorgement in that case. United States v. Barwick, 2018 WL 1135414 (M.D. Fla. Feb. 27, 2018), report and recommendation adopted by 2018 WL 1115701 (M.D. Fla Feb. 27, 2018).

There is no reason to conclude the outcome should be any different here.

Defendant Salmon oversaw tax preparation at both the Fayetteville and Dunn stores, and is responsible either directly or indirectly for all the false returns filed at the Fayetteville store. As stated above, fees for tax returns with defendant Salmon's Electronic Filing Identification Number ("EFIN") included $3,779 for returns claiming employee business expenses on Schedule A, $38,707 for returns falsifying business income and/or expenses on Schedule C, and $32,357.73 in false claims generating EITC. (See Reinken Decl. (DE 32–6) ¶¶ 9-19). For the 2016 year, plaintiff approximates $17,675.00 of defendant Salmon's $43,000 reported on her Form 1099 were from fees that were generated as a part of false tax returns. (Statement of Facts (DE 30) ¶¶ 395, 396; Salmon Form 1099 (DE 32–127)).

Based on the calculations submitted in the Reinken Declaration, as well as the limited tax information for defendant Salmon, there is sufficient reason to conclude the estimate of fees to be disgorged for 2016 and 2015 is reasonable. (See Reinken Decl. (DE 32–6) ¶¶ 9-19; Salmon Form 1099 (DE 32–127)). Defendant Salmon's failure to provide tax forms does not provide reason for the court to second guess this approximation. Defendant Salmon never identified the amount of fees she received, or the amount of salary she received while working at BPTS, LLC and QA Tax Service, Inc. (Applegate Decl. (32–2) ¶ 6). BPTS, LLC did not issue a Form 1099 to defendant Salmon for 2015. (Ruiz Decl. (DE 32–5) ¶ 8). Even so, the data submitted by plaintiff is a reasonable approximation of the fees to be disgorged as profit from defendant's Salmon's wrongdoing.

Similarly, the estimated amount to be disgorged from defendant Lewis is reasonable. In 2015, 2016, and 2017, fees for tax returns with the EFIN associated with the tax preparation store in Dunn, North Carolina used by defendant Lewis and other tax return preparers at that store to file

tax returns included $26,122.88 for returns claiming employee business expenses on Schedule A, $34,559.45 for returns falsifying business income and/or expenses on Schedule C, and $44,239.30 in false claims generating EITC. (See Reinken Decl. (DE 32–6) ¶¶ 9-11, 20-31).

According to defendant Lewis, he received between 15% and 20% of the tax preparation fees generated by the Dunn, North Carolina store. (Lewis Dep. (DE 32–18) at 21:14-22:3). Assuming Defendant Lewis received only 15% of these fees, defendant Lewis received ill-gotten gains in the amount of $9,947.12 in 2015, $3,521.84 in 2016, and $2,269.28 in 2017, for a total of $15,738.24. This amount, based on defendant Lewis's own statements as to how much money he received from tax preparation fees, is reasonable.

Defendants do not offer any evidence to rebut plaintiff's argument that its calculations are a reasonable approximation of the fees to be disgorged. Therefore, the court orders disgorgement against defendant Salmon in the amount of $74,843.73, and disgorgement against defendant Lewis in the amount of $15,738.24.

## CONCLUSION

Based on the foregoing, the court GRANTS plaintiff's motion for summary judgment (DE 29). IT IS HEREBY ORDERED that:

A.      Tanisha Salmon a/k/a Tanisha Chambers and Raeford Lewis, and all those in active concert or participation with them, are permanently enjoined from:

(1) acting as federal tax return preparers or requesting, assisting in, or directing the preparation or filing of federal tax returns, amended returns, or other related documents or forms for any person or entity other than themselves;

(2) preparing or assisting in preparing federal tax returns that they know or reasonably should know would result in an understatement of tax liability or the overstatement of federal tax refund(s) as penalized by 26 U.S.C. § 6694;

(3) owning, operating, managing, working in, investing in, providing capital or loans

36

to, receiving fees or remuneration from, controlling, licensing, consulting with, or franchising a tax return preparation business;

(4) training, instructing, teaching, and creating or providing cheat sheets, memoranda, directions, instructions, or manuals, pertaining to the preparation of federal tax returns;

(5) maintaining, assigning, holding, using, or obtaining a Preparer Tax Identification Number (PTIN) or an Electronic Filing Identification Number (EFIN);

(6) engaging in any other activity subject to penalty under 26 U.S.C. §§ 6694, 6695, 6701, or any other penalty provision in the Internal Revenue Code; and

(7) engaging in any conduct that substantially interferes with the proper administration and enforcement of the internal revenue laws.

B.    Tanisha Salmon a/k/a Tanisha Chambers and Raeford Lewis shall immediately and permanently close all tax return preparation stores that they own directly or through any entity, and doing business under any name;

C.    Tanisha Salmon a/k/a Tanisha Chambers and Raeford Lewis are prohibited from assigning, transferring, or selling any franchise agreement, independent contractor agreement, or employment contract related to any tax return preparation business to which they or any entity under their control is a party;

D.    Tanisha Salmon a/k/a Tanisha Chambers and Raeford Lewis are prohibited from: (1) selling to any individual or entity a list of customers, or any other customer information, for whom Tanisha Salmon a/k/a Tanisha Chambers and Raeford Lewis and any business or name through which they, or those acting at their direction, have at any time since January 1, 2014 prepared a tax return; (2) assigning, disseminating, providing, or giving to any current or former franchisee, General Sales Manager, District Sales Manager, manager, tax return preparer, employee, or independent contractor of Tanisha Salmon a/k/a Tanisha Chambers and Raeford Lewis or any

37

business through which they prepare tax returns or own or franchise a tax return preparation business, a list of customers or any other customer information for customers for whom Tanisha Salmon a/k/a Tanisha Chambers and Raeford Lewis, and any business or name through which they, or those acting at their direction, have at any time since January 1, 2014 prepared a tax return; and (3) selling to any individual or entity any proprietary information pertaining to any business or name through which Tanisha Salmon a/k/a Tanisha Chambers and Raeford Lewis, or those acting at their direction, have at any time since January 1, 2014 prepared a tax return;

E.     Tanisha Salmon a/k/a Tanisha Chambers and Raeford Lewis shall contact, within 30 days of this Order, by United States mail and, if an e-mail address is known, by e-mail, all persons for whom Tanisha Salmon a/k/a Tanisha Chambers and Raeford Lewis, and their managers, employees, and tax return preparers, prepared federal tax returns or claims for a refund from January 1, 2014 and continuing through the date of this Order to inform these individuals of this Order of Permanent Injunction, including sending a copy of this Order but not enclosing any other documents or enclosures unless agreed to by counsel for the United States or approved by the Court;

F.     Tanisha Salmon a/k/a Tanisha Chambers and Raeford Lewis shall produce to counsel for the United States, within 30 days of this Order, a list that identifies by name, social security number, address, e-mail address, and telephone number and tax period(s) all persons for whom Tanisha Salmon a/k/a Tanisha Chambers and Raeford Lewis, and their managers, employees, and tax return preparers, prepared federal tax returns or claims for a refund for tax years from January 1, 2014 and continuing

through the date of this Order;

G.      Tanisha Salmon a/k/a Tanisha Chambers and Raeford Lewis shall produce to counsel for the United States, within 30 days of this Order, a list that identifies by name, address, e-mail address, and telephone number all principals, officers, managers, franchisees, employees, and independent contractors of Tanisha Salmon a/k/a Tanisha Chambers and Raeford Lewis from January 1, 2014 to the date of this Order;

H.      Tanisha Salmon a/k/a Tanisha Chambers and Raeford Lewis shall provide a copy of this Order to all principals, officers, managers, franchisees, employees, and independent contractors of Tanisha Salmon a/k/a Tanisha Chambers and Raeford Lewis within 15 days of this Order, and provide to counsel for the United States within 30 days of this Order a signed and dated acknowledgment of receipt of the Court's order for each person whom Tanisha Salmon a/k/a Tanisha Chambers and Raeford Lewis provided a copy of this Order;

I.      The Court shall retain jurisdiction over Tanisha Salmon a/k/a Tanisha Chambers and Raeford Lewis and over this action to enforce this Order and Judgment of Permanent Injunction and Disgorgement entered against them; and

J.      The United States is entitled to conduct discovery to monitor Tanisha Salmon's a/k/a Tanisha Chambers' and Raeford Lewis' compliance with the terms of this Order and Judgment of Permanent Injunction and Disgorgement entered against them.

IT IS FURTHER ORDERED  that Judgment is entered in favor of the United States and against Tanisha Salmon a/k/a Tanisha Chambers and Raeford Lewis on the United States' claim, brought under 26 U.S.C. § 7402, for the disgorgement of the ill-gotten gains that Tanisha Salmon a/k/a Tanisha Chambers and Raeford Lewis received for the preparation of tax returns making false

39

claims, as follows: against Tanisha Salmon a/k/a Tanisha Chambers in the amount of $74,843.73; against Raeford Lewis in the amount of $15,738.24.  The clerk is DIRECTED to close this case.

SO ORDERED, this the 10th day of December, 2018.


_____
LOUISE W. FLANAGAN
United States District Judge